IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHN SHAW,

                                                                                  OPINION AND ORDER

                Plaintiff,

                                                                                   14-cv-08-bbc

      v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff John Shaw is seeking judicial review of the adverse ruling of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying his application for Supplemental Security Income benefits. Plaintiff contends that the administrative law judge hearing his appeal erred in two ways: (1) he failed to resolve a conflict between the Dictionary of Occupational Titles and the vocational expert's testimony; and (2) he did not explain how he interpreted the medical consultant's opinion in determining plaintiff's residual functional capacity. A review of the record shows that the administrative law judge did not err in these respects and that his decision is well supported by the evidence. Accordingly, defendant's decision will be affirmed.

RECORD FACTS

    Plaintiff was born in 1978; he was 31 when he filed for social security benefits in

1

March 2010. He alleged he had been disabled since May 2, 2009.

The administrative law judge found that plaintiff had severe impairments in the form of obesity, impaired vision in one eye and depressive and anxiety disorders with a history of alcoholism in remission, but that none of his impairments, alone or in combination, met or equaled a listed impairment. Plaintiff's obesity had no significant physical consequences, such as significant end organ damage, and, although he remained morbidly obsese, he had managed to lose fifty pounds in the period preceding his hearing. Plaintiff had sleep apnea that was relieved with the use of a continuous pressure airway (CPAP) machine. Although in prior years, he had told his doctors he had back pain when walking at a doctor's visit, AR 395, he reported in June 2012 that he was roller blading and playing disc golf. AR 733. His vision was 20/20 vision in one eye, but only 20/150 in the other. AR 433.

Over the years, plaintiff's psychological problems led to a number of voluntary admissions for inpatient psychiatric treatment and reported suicidal complaints. Many if not all of these occurred when plaintiff was intoxicated and had stopped taking his medications. E.g., AR 547 (Notes of 3/17/11 hospital admission). When plaintiff stopped drinking and took his medications, he tended to be stable. Id.

In September 2010, plaintiff saw a consulting psychiatrist, Dr. Richard Hurlburt, who diagnosed major depression, recurrent, severe, nonpsychotic, with some post traumatic stress disorder issues and social anxiety disorder. AR 418. It was Hurlburt's opinion that although plaintiff would not be likely to have any difficulty understanding, remembering and carrying out simple instructions, he would have "a great deal of difficulty with supervisors and

2

coworkers" and he would "have difficulty with attention, concentration and work pace," as well as with stress and change. Id. Hurlburt assessed plaintiff's GAF (global assessment of functioning) score as 45. (A GAF score is "a numeric scale of 0 through 100 used to assess severity of [psychiatric] symptoms and functional level." Yurt v. Colvin, 758 F.3d 850, 853 (7th Cir. 2014). A score of 45 correlates with serious symptoms or any serious impairment in social, occupational or school functioning. Id.).

In January 2012, plaintiff's treating physician, Dr. Maureen Leahy, reported plaintiff's primary diagnoses as alcohol and opiate dependency and major depressive disorder. AR 764-66. In her opinion, plaintiff had no psychotic symptoms and his thoughts were logical and goal oriented. AR 766. She saw plaintiff again on four occasions in the first half of 2012 and observed that his response to medication was good and that he remained abstinent from drugs and alcohol. AR 767-70.

State agency assessments were consistent with those of plaintiff's treating and consulting physicians. Two state psychologists assessed plaintiff as having mild to moderate restrictions in activities of daily living, maintaining social functioning and maintaining concentration, persistence and pace. AR 424-43; AR 574-87. Dr. Jack Spear wrote that plaintiff had depressive syndrome characterized by thoughts of suicide, AR 427, recurrent and intrusive recollection of a traumatic experience, as well as social anxiety, AR 429, but added that plaintiff had "the capacity to handle the basic mental demands of unskilled work." AR 647. Dr. Kenneth Clark believed that plaintiff had major depressive disorder controlled with medication, AR 577, as well as anxiety associated with substance addiction

disorders, AR 582, but he found that plaintiff had only mild or moderate limitations in the activities of daily living, maintaining social functioning and maintaining concentration, persistence and pace. AR 584.

An agency physician, Dr. Mina Korshidi, reviewed plaintiff's file in September 2010 and noted that plaintiff was limited in his near visual acuity, his far acuity and his depth perception, AR 441, but she concluded that his vision problems were not severe, given his normal vision in his left eye. AR 443. She found no physical limitations that would prevent plaintiff from performing light work. AR 438-43. Seven months later, agency physician Dr. George Walcott reviewed plaintiff's application and found plaintiff's statements about his medical problems (blind right eye, anxiety, depression, sleep apnea, stomach problems and right arm arthritis) to be partially credible. AR 595. He found also that plaintiff could lift ten pounds occasionally and less than ten pounds frequently, could stand or walk at least two hours in an eight-hour day, sit for at least six hours in an eight-hour day, push and pull without limitations, stoop and climb ladders or scaffolds occasionally. In Walcott's opinion, plaintiff could not kneel, crouch or crawl, but had no manipulative limitations and could perform sedentary work. AR 588-93.

In June 2012, physician's assistant Stephen Meyer saw plaintiff at Ministry Medical Group in Stevens Point. He noted that plaintiff had lost 50 pounds, had been active in roller blading, roller skating and disc golf and had been abstinent from drugs and alcohol for 100 days. AR 733. Meyer wrote that plaintiff "was doing wonderfully," that he had been doing "a lot of exercising and is real active. He is watching his diet and he feels the best he

has ever felt in his [l]ife." Id. Plaintiff complained of a sore right knee that seemed to have resulted from a fall on a carpet; Meyer examined it and noted no particular problems such as edema or radiation of pain to the foot. Id. He wrote that plaintiff's depression and anxiety were stable and that they were related to plaintiff's drug use. AR 734.

At plaintiff's administrative hearing, a vocational expert testified that she had had an opportunity to study the exhibits in the file showing that plaintiff's only work history consisted of employment as a housekeeping employee in a hotel and as a fast food worker, both of which are classified as unskilled, light jobs. AR 85-86. She testified that plaintiff could not perform either of these jobs "mainly due to the occasional interaction with co-workers and the public." AR 86. In response to questioning from the administrative law judge, she testified that there were occupations in Wisconsin that could be performed by a person of plaintiff's age, education and work history, with no vision in his right eye, limited to light work and to simple, repetitive tasks, likely to be off task about 5 percent of the work day in addition to regularly scheduled work breaks, not capable of performing work that required decision making or more than occasional interaction with coworkers, the general public or supervisors. These included the light, unskilled jobs of assembly, packaging, inspecting, dishwashing and food preparation, all of which exist in Wisconsin in numbers in excess of 1000. When asked whether plaintiff could perform each of the jobs so long as he was not off task more than 15% of the time, she said that he could and added that he could perform the jobs so long as he was able to produce at least 75% of what the average worker at the same job could produce. She added that she knew this from her own experience in

5

placing 900 to 1200 disabled persons in jobs. AR 88-90.

OPINION

Plaintiff challenges the adverse determination of the Social Security Administration on two grounds. First, he says that the vocational expert's testimony about plaintiff's ability to work in the jobs she identified conflicts with information in the Selective Characteristics of Occupations concerning the vision requirements for such jobs and the administrative law judge did not resolve the conflict. Second, the administrative law judge did not explain how he translated the medical consultant's opinion into his residual functional capacity finding.

A. Plaintiff's Vision Problems

Plaintiff's counsel did not ask any questions of the vocational expert at the hearing about the vision requirements for the jobs she identified, but he submitted a brief afterwards in which he called the vocational testimony inadequate because the expert had not considered the severity of plaintiff's vision problems. AR 268-72. For this proposition, he cited entries from the Selective Characteristics of Occupations, which he filed after the administrative hearing, and which he says establish that plaintiff's bad right eye would prevent him from performing any of the jobs described by the vocational expert. (Plaintiff's counsel did not explain what the publication is; it appears to be a companion volume to the Revised Dictionary of Occupational Titles, published by the Social Security Administration, that provides information about the kinds of jobs that disabled claimants can perform, detailing

the physical and environmental demands of particular jobs.)

The administrative law judge rejected counsel's attempt to substitute his judgment for that of both the medical consultants and the vocational expert, "without having demonstrated any expertise or certification in either category." AR 35. He found plaintiff's own testimony of what he was capable of doing far more persuasive than counsel's lay interpretation of the information in the Selective Characteristics of Occupations publication. Plaintiff had testified that he engaged in activities such as disc golf, which indicated to the administrative law judge that he had a "reasonable degree of functional eyesight sufficient to allow him to perform jobs requiring visual acuity and ability to focus." Id. Plaintiff's field of vison might be "slightly impaired by monocular vision," but not sufficiently to prevent him from driving and performing other work related tasks. Id.

The administrative law judge did not err in rejecting counsel's argument about the visual acuity plaintiff would need to perform certain jobs. He pointed out that counsel had not shown he had any expertise or certification that would allow him to give an opinion about the effect of visual limitations such as plaintiff's or about how plaintiff's particular limitation might affect his ability to work. AR 35. Despite plaintiff's claim in his opening brief that the administrative law judge had "failed to resolve a conflict between the Dictionary of Occupational Titles and the vocational expert's testimony," Plt.'s Br., dkt. #16 at 1, he has failed to show that any true conflict existed. It was reasonable for the administrative law judge to conclude find that plaintiff's ability to drive and to play disc golf demonstrated "a reasonable degree of functional eyesight sufficient to allow [plaintiff] to perform jobs requiring visual acuity and ability to focus." AR 35.

B. Translation of Medical Consultant's Opinion into Residual Functional Capacity Assessment

The administrative law judge found that plaintiff had the residual functional capacity to perform light work, so long as he would not be expected to engage in more than occasional interactions with co-workers, the general public and supervisors, make decisions or perform more than simple repetitive tasks and could be allowed off task 5% of the day. In plaintiff's view, this finding is erroneous because the administrative law judge did not explain how he converted Dr. Hurlburt's evaluation into his analysis of plaintiff's residual functional capacity, and thus failed to build an accurate and logical bridge between the evidence and his conclusion, as he is required to do. Berger v. Astrue, 516 F.3d 539, 544 (7th Cir. 2008) ((citing Clifford v. Astrue, 227 F.3d 863, 872 (7th Cir. 2000)).

In fact, the administrative law judge did build an accurate and logical bridge between the medical evidence and his finding. As to the medical evidence, he noted that two agency doctors had found that plaintiff could perform the physical functions necessary for light work, including sitting, standing, lifting, pushing and pulling. As to the evidence of mental and emotional capacity to work at the jobs identified by the vocational expert, the administrative law judge began his questions to the vocational expert with Hurlburt's finding that plaintiff would not be likely to have any difficulty understanding or remembering and carrying out simple instructions. He translated Hurlburt's findings that plaintiff would have a great deal of difficulty with supervisors and coworkers and would have difficulty with attention, concentration and work pace, as well as with stress and change, into requirements that plaintiff could engage in only occasional interaction with co-workers, the general public and supervisors, would not have to make decisions, would

8

perform only simple, repetitive tasks and might be off task 5% of the work day.

Plaintiff takes issue with the administrative law judge's "translation," arguing that the administrative law judge never explained how he arrived at the conclusion that plaintiff would be off task for only 5% of the work day, and that such a conclusion is inconsistent with his finding that plaintiff had "marked limitations in concentration, persistence and pace." Plt.'s Br., dkt. #16. This argument is flawed in two respects. First, neither the administrative law judge nor any medical source found that plaintiff had *marked* limitations in concentration, persistence and pace. Instead, they assessed *mild* to *moderate* limitation in that area. AR 32 (administrative law judge's decision; AR 418 (Hurlburt report); AR 420-21& 434 (Spear report); AR 584 (Clark report). Second, Dr. Hurlburt did not say that plaintiff was incapable of performing any job requiring attention, concentration or pace; he said only that plaintiff would "have difficulty" with such a job. Moreover, agency psychologist Jack Spear had assessed plaintiff as capable of handling the basic demands of unskilled work. AR 422. The administrative law judge accounted for plaintiff's limitations in concentration, persistence and pace by asking the vocational expert whether plaintiff could perform the jobs the expert had identified even if he was off task 5% of any day. Even if this off-task estimate was not adequate to account for plaintiff's limitations, the vocational expert testified that any of the jobs she had identified could be performed by someone who was off task 15% or even as much as 25%. AR 87-88.

The administrative law judge should have been more precise in framing his hypothetical question to the vocational expert. The Court of Appeals for the Seventh Circuit has criticized administrative law judges repeatedly for equating limitations in concentration, persistence and

9

pace with the ability to perform "simple, repetitive tasks," e.g., O'Connor-Spinner v. Astrue, 627 F.3d 614, 618-19 (7th Cir. 2010) (hypothetical question to vocational expert that asked whether plaintiff could perform routine, repetitive tasks with simple instructions did not adequately capture plaintiff's limitations in concentration, persistence and pace) (collecting cases), it has done so primarily in cases in which the evidence shows that the plaintiff's limitations are far more severe than those of this plaintiff or in which the administrative law judge failed to make the required findings of the severity of a claimed mental impairment. For example, in Yurt v. Colvin, 758 F.3d 850, 858 (7th Cir. 2014), the administrative law judge omitted from her hypothetical to the vocational expert any limitation to low stress positions and did not "capture [plaintiff's] moderate difficulties understanding and remembering instructions or performing activities within a schedule." The court of appeals believed that this limitation did not reflect the plaintiff's temperamental deficiencies resulting from his depression and psychotic disorder. Id. at 859. In O'Connor-Spinner, 627 F.3d 614, the plaintiff had a long history of depression that had caused crying fits, violent outbursts and attempts at suicide, along with memory problems and confusion; the court of appeals found that limiting the plaintiff simply to low stress jobs was not adequate to "cause the [vocational expert] to eliminate positions that would pose significant barriers to someone with the applicant's depression-related problems in concentration, persistence and pace." Id. at 620. In Stewart v. Astrue, 561 F.3d 679, 682 (7th Cir. 2009), both the plaintiff's treating physician and treating psychiatrist believed the plaintiff was incapable of work-related activities; the administrative law judge did not include these opinions in the hypothetical he posed to the vocational expert. In Craft v. Astrue, 539 F.3d 668, 675 (7th Cir. 2008), the administrative law

10

judge did not make a specific finding in each of the functional areas of limitation, but asked the vocational expert only whether the plaintiff had the ability to do unskilled work, without accounting for his difficulty with memory, concentration and mood swings.

By not focusing on plaintiff's specific problems in his questioning of the vocational expert, the administrative law judge made this case more difficult to decide. In the future, he and his colleagues should heed the warnings of the court of appeals and avoid the practice of merely correlating a claimant's limitation in the area of concentration, persistence and pace to "simple, repetitive work." Instead, they should explain how and why such a correlation accommodates the plaintiff's specific mental and emotional problems.

In this case, however, a remand would advance no purpose when it is clear that when plaintiff is not drinking or taking illegal drugs he is capable of performing simple, repetitive work of the kind identified by the vocational expert. As the administrative law judge noted in his decision, "absent the material element of intoxication, the claimant would not demonstrate even [the degree of impairment indicated in the record." AR 32. He added that in light of more current records, plaintiff might have "no significant mental restrictions at all if" he remained abstinent. AR 34.

It is true that plaintiff had a low global assessment of functioning score when Dr. Hurlburt saw him in October 2010, but he presented a very different picture in June of 2012. He was losing weight, exercising, engaging in outdoor activities and capable of maintaining sobriety. As the administrative law judge pointed out, a GAF score is only a snapshot of a person's mental and emotional functioning at a particular time, not a picture of a person's long term level of

11

functioning. AR 32. In the face of the evidence that once plaintiff became sober, his mental and emotional health improved so significantly that physician's assistant Stephen Meyer said he was doing "wonderfully," the administrative law judge did not err in disregarding a negative GAF score that was more than two years old.

In summary, I conclude that although the administrative law judge should have been more precise in framing his hypothetical question to the vocational expert, the record provides substantial evidence to support his conclusion that plaintiff is not disabled under the Social Security Act.

ORDER

IT IS ORDERED that plaintiff John Shaw's motion for summary judgment is DENIED and the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 20th day of November, 2014.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge